IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PEAK INTERESTS, LLC,<br>a Colorado Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>TARA HILLS VILLAS, INC.,<br>a Nebraska Corporation,<br><br>Defendant. | CASE NO. 8:06CV747<br><br>MEMORANDUM<br>AND ORDER |

This matter before the Court on two motions for summary judgment filed by the Defendant Tara Hills Villas, Inc. (hereafter "THV"). THV seeks summary judgment on all claims alleged against it by the Plaintiff, Peak Interests, LLC (hereafter "Peak") and it seeks summary judgment on its counterclaim against Peak based on its right to possess the property at issue. (Filing No. 31). The issues have been fully briefed, evidence has been offered, and the matter is ripe for disposition. For the reasons stated below, THV's Motion for Summary Judgment will be denied in all respects.

## JURISDICTION

Peak filed this action on December 7, 2006, invoking the Court's diversity jurisdiction. (Filing No. 1, p. 1 ¶ 4). Federal court diversity jurisdiction of state law claims requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). The Court finds that the parties reside in different states: Peak is a resident of Colorado, and THV is incorporated and principally conducts its business in Nebraska. In assessing the amount in controversy based on the value of the option to purchase the

leased property, courts will look to the allegations in the complaint. *Smith v. American States Preferred Ins. Co.,* 249 F. 3d 812, 813 (8th Cir. 2001)(noting that "the plaintiff's viewpoint" is used in determining whether the amount in controversy requirement in a diversity action is satisfied). Peak values the option to purchase the property at $250,000.00. (Filing No. 1, Complaint ¶ 9). The alleged value is not contested, and it satisfies the jurisdictional requirement of 28 U.S.C. § 1332. Based on the Court's independent review, the Court concludes that it has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).

## FACTS

The parties' briefs and indexes of evidence demonstrate the following facts.[1] (Filing Nos. 32, 33, 36). On May 1, 1975, Nebraska Pizza Hut, Inc., entered into an agreement (hereafter the "Lease") with Mike Hogan Realty Co., Inc., (hereafter "Hogan Realty") as lessor, to lease a property for use as a Pizza Hut restaurant. On March 11, 1976, the parties executed a Supplement to Lease (the Lease and Supplement to Lease are hereafter collectively referred to as the "Lease Agreement") that established the base rent for the property at $1,516.21 per month and that fixed the term of the 20-year lease to commence on March 1, 1976, and to expire on the last day of February 2006. Pursuant to the terms of the Lease Agreement, Nebraska Pizza Hut had the right to exercise an

---

[1] The parties have fully complied with this Court's local rule NECivR 56.1, which requires the moving party to set forth in short, separately numbered paragraphs each material fact on which that party relies, with pinpoint references to the evidentiary record providing support for that fact. The responding parties must then address each such numbered paragraph and, in the case of disagreement, make pinpoint references to evidentiary materials demonstrating the existence of a genuine issue of material fact. The "FACTS" section of this Memorandum and Order is derived directly from the undisputed facts set forth in THV's brief and index of evidence (Filing No. 33, ¶¶ a-b), specifically acknowledged in the corresponding paragraphs in the responsive brief of Peak (Filing No. 36).

option to purchase the property ("Purchase Option") if notice of acceptance was properly provided to Hogan, or its successor or assign, prior to the expiration of the Lease Agreement on February 28, 2006. Nebraska Pizza Hut's interest in the Lease Agreement was assigned and reassigned over the years, and in 1996, the interest was assigned to Peak.[2] Likewise, Hogan Realty's interest in the Lease Agreement was assigned to THV, which is the sole legal title holder and owner of the property.

According to Joseph Aragon, the principal manager and agent of Peak, on February 13, 2006, he personally delivered a "Notice of Intent to Purchase" letter to the offices of Michael J. Hogan, the President of THV. (Filing No. 36, Aragon Dep. 21:6-24, 57:18-59:7, 57-59).[3] Aragon returned to Denver that evening and placed a copy of the "Notice of Intent to Purchase" letter in the U.S. Mail on the same date. The terms of the Lease Agreement expired on February 28, 2006.

On March 1, 2006, Michael Hogan wrote to Peak advising that the term of the Lease Agreement had expired on February 28, 2006, and directing Peak to vacate the property immediately. In correspondence dated March 7, 2006, Peak's counsel responded to Hogan stating that Peak was ready, willing and able to close on the sale of the property, and enclosing a copy of Peak's February 13, 2006, "Notice of Intent to Purchase" letter that Peak believed had been previously delivered to Hogan. On March 8, 2006, THV served

---

[2] On August 1, 1980, Nebraska Pizza Hut, Inc., assigned its rights, title, and interest under the Lease Agreement to Pizza Hut of America, Inc., who in turn assigned its rights, title, and interest under the Lease Agreement to Pizza Hut of San Diego, Inc., on September 4, 1996. Pizza Hut of San Diego, Inc., then assigned its interest to Peak on September 4, 1996.

[3] Aragon's deposition is not included as part of an index of evidence in violation of the Court's local rules. The deposition is identified on page 5 of the Plaintiff's brief, and is attached to the brief itself. Because the Defendant did not object to the evidentiary submission, the Court has considered it.

Peak with a Notice to Quit / Vacate the property. On March 14, 2006, fourteen days after the Lease Agreement expired, THV received mailed written notice from Peak indicating Peak's willingness to exercise the Purchase Option.[4]

Following the expiration of the Lease Agreement, Peak remained, and still remains, in possession of the property. THV seeks immediate return of the property occupied by Peak.

## STANDARD OF REVIEW

In the context of a summary judgment motion, the Court's function is to consider the evidence and determine whether the moving party is entitled to judgment as a matter of law. The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25. In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id* at 586.

---

[4]The postmark on Exhibit D indicates that it was metered in Denver, Colorado, on February 13, 2006, and postmarked in Lincoln, Nebraska, on March 13, 2006. The Plaintiff provides no explanation for the gap in time. (Filing No. 32, Affidavit of Michael J. Hogan, Ex. D).

4

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

The issue before this Court is whether Peak properly and timely exercised the Purchase Option contained in the Lease Agreement prior to its expiration on February 28, 2006. THV contends that Peak's claim for specific performance should be denied because Peak's attempt to exercise the option to purchase the property was improper and untimely, and therefore, Peak is unlawfully detaining the property. Peak contends that it timely delivered its acceptance of the option offer, and that at least there are genuine issues of material fact that remain regarding whether its acceptance was timely and proper.

In diversity cases, the Court applies substantive state law. *Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 596 (8th Cir. 2007). The Nebraska Supreme Court's basic rules of contract construction were recently summarized as follows:

> In interpreting a contract, we must first determine, as a matter of law, whether the contract is ambiguous. *Estate of Stine v. Chambanco, Inc.*, 251 Neb. 867, 560 N.W.2d 424 (1997). . . . A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Estate of Stine*

5

> *v. Chambanco, Inc.*, supra.  A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.  *Id.* . . . [T]he meaning of an unambiguous contract is a question of law. *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994).  When a contract is unambiguous, the intentions of the parties must be determined from the contract itself.  *Id.*; *Properties Inv. Group v. Applied Communications,* 242 Neb. 464, 495 N.W.2d 483 (1993).

*Ruble v. Reich*, 611 N.W.2d 844, 849-850 (Neb. 2000).  Nebraska courts have followed the Restatement (Second) of the Law of Contracts §§ 1-385 (1981).  *See e.g., Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc*., 702 N.W.2d 355, 369 (Neb. 2005).

The Court has reviewed the Lease Agreement and finds no ambiguity. The meaning of the unambiguous contract is a question of law.  Because the Lease Agreement is unambiguous, the parties' intent will be determined from the contract itself.

### *Manner of Notice Permitted Under the Lease Agreement*

THV argues that the Lease Agreement specified only one manner of communicating its notice – mailing. Peak disagrees, arguing that the Lease Agreement specified two methods of communicating notice, either by mail or by personal delivery. Peak attempted to employ both methods of communicating notice. The parties agree that the Lease Agreement imposed two requirements on Peak to exercise the option to purchase.  First, Peak had to give notice in a manner permitted by the Lease Agreement, and second, the notice had to be given in a timely manner, by the February 28, 2006, deadline.

There are two references to notice in the Lease Agreement that are relevant to this discussion. The first reference is contained in Paragraph XX, referred to as the "Option Provision," which states:

> [Peak] may exercise [the Purchase Option] by mailing notice of its intention to exercise to [THV].

The second reference is contained in Paragraph XXI, referred to as the "General Notice Provision," which states:

> Any notices or demands required, or permitted by law, or any provision of this lease, shall be in writing, and if the same is to be served upon [THV], may be personally delivered to [THV], or may be deposited in the United States mail, registered or certified, with return receipt requested, postage prepaid, and addressed to [THV]...

(Filing No. 32, Kleine Aff., Ex. A, Lease Agreement at p. 10).

THV argues that the General Notice Provision does not apply to the Peak's right to exercise the option to purchase because the Option to Purchase provision contains its own notice language, and is therefore more specific to the option issue. THV argues that because mailing the notice was the only option, and the notice was untimely, it is entitled to summary judgment. Peak claims it gave proper notice because it both mailed and personally delivered the notice as is permitted in the General Notice Provision.

Under Nebraska law, "the proper rule of construction is that the more specific term of the contract will control over the general provision of the contract as it relates to the same subject matter." *Panwitz v. Miller Farm-Home Oil Service, Inc.*, 422 N.W.2d 63, 66 (Neb. 1988) *(quoting* 17A C.J.S. Contracts § 313 (1963). Because the language in the Option Provision and in the General Notice Provision relate to the same subject – the communication of notice – the Court concludes that the more specific terms relative to

7

notice are contained in the General Notice Provision, and that it governs the parties' obligations relative to communicating notice.

The General Notice Provision relates to "[a]ny notices... required... [by] any provision of this lease..." The parties agreed to this broad scope, and therefore the requirements of the General Notice Provision apply to all notices and all provisions in the Lease Agreement that required notice, including the Purchase Option Provision. Though the scope of the General Notice Provision is broad, it is not general, and the requirements that apply are very specific. Acceptance of an option contract "may be transmitted by any means which the offeror... authorized the offeree to use..." *Anderson v. Stewart,* 32 N.W.2d 140, 142 (Neb. 1948). Thus, the Court concludes that the Lease Agreement requires, through the General Notice Provision, that Peak exercise its option to purchase by communicating to THV its notice of intent to purchase by (1) mailing by certified or registered mail, or (2) personal delivery to the offices of THV.

### *Sufficiency of Peak's Mailing*

In an option contract, the "requirements governing the... manner of exercise of a power of acceptance... are applied strictly. It is reasoned that any relaxation of terms would... subject one party to greater obligations than he bargained for." *Guy Dean's Lake Shore Marina, Inc. v. Ramey*, 518 N.W.2d 129, 133 (Neb. 1994) (*quoting* Restatement (Second) of Contracts § 25, comment d. (Reporter's Note) at 75 (1981)). Peak used regular first class U.S. mail and did not mail the option notice "registered or certified, with return receipt requested" as required by the Lease Agreement. Peak's failure to follow the specific requirements regarding mailing, as set forth in the General Notice Provision, render its attempt to mail notice invalid. (Affidavit of Michael J. Hogan, Filing No. 32

("Hogan Aff."), Ex. D, pp. 1,2)(Aragon Dep. 39:19 - 40:15). *See also Western Tire, Inc. v Skrede*, 307 N.W.2d 558, 563 (N.D. 1981)(holding that it was improper to rely on a presumption that a letter sent in the regular course of the mail indicates that the letter was duly directed and mailed, since the lease requirement of sending notice by registered or certified mail was designed to eliminate the problem of proving that the notice had been sent on time and was received).

Because Peak did not comply with the specific requirements of mailing notice as set forth in the General Notice Provision, the Court concludes that Peak's attempt to exercise its option by sending its notice of acceptance by ordinary mail was not sufficient under the contract, and that THV is entitled to summary judgment on this narrow issue. Because the mailing of the notice was invalid, the Court need not address whether the mailing was timely. Thus, if Peak's notice of acceptance is valid, then it must be valid based on Aragon's personal delivery of the Notice of Intent to Purchase.

***Personal Delivery of the Notice of Intent to Purchase***

The General Notice Provision permits Peak to exercise its option to purchase if it "personally delivered" the Notice to THV (Kleine Aff., Ex. A, Lease Agreement, Paragraph XXI). "Personal delivery" is not defined in the contract, and it should be given its plain and ordinary meaning.

The parties cite no Nebraska cases or statutes that explain what acts might constitute sufficient personal delivery in a commercial context, and the Court has found none based on its own research. Based on the plain language of the General Notice Provision, the Court finds that "personal delivery" would include Aragon's alleged

9

hand-delivery of the notice. *See Carmichael v. Dan Nance Corp.*, 264 S.E.2d 601 (S.C. 1980).

However, the Court finds that there is a genuine issue regarding whether Peak hand-delivered the Notice of Intent to Purchase to THV. Hogan states that THV did not receive the notice. (Filing No. 32, Hogan Aff., p. 2, ¶8.) Aragon states that he hand-delivered the notice on February 13, 2006, prior the expiration date of the Lease Agreement, when he provided the written Notice of Intent to Purchase to someone who identified himself as an employee of THV. (Aragon Dep. 57-59). This evidence establishes a genuine issue of material fact that will definitely "affect the outcome of the suit under governing law." *Liberty Lobby,* 477 U.S. at 248. Because the Plaintiff has presented evidence sufficient to raise a genuine issue regarding whether the notice was personally delivered, which may turn on a credibility determination, the Defendant's motion for summary judgment on this part of the Plaintiff's claims and in support of its counterclaim must be denied.

## CONCLUSION

For all the reasons stated, I find that Peak has presented sufficient facts to raise a genuine issue of material fact regarding whether Peak personally delivered its Notice of Intent to Purchase Option to THV. Because a genuine issue of material fact exists, the Defendant's motions are denied as to whether personal delivery of the notice was made. However, the motion is granted to the extent that the Court has determined that Peak's mailing of the notice was not sufficient under the contract. Thus, the motion will be granted in part and denied in part consistent with this memorandum.

IT IS ORDERED:

1. The Defendant's Motion for Summary Judgment (Filing No. 31) is granted only to the extent that the Court has concluded that the Plaintiff's attempt to exercise its option to purchase the property by sending notice through the United States mail was invalid under the Lease Agreement, and the motion is denied in all other respects; and

2. The Defendant's Motion for Partial Summary Judgment on the Defendant's Counterclaim  (Filing No. 31) is denied.

DATED this 12th day of October, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge